DANIEL S. MOOERS v. NORTHERN PACIFIC RAILROAD COMPANY.[1]

June 23, 1897.

Nos. 10,586—(157).

Railway—Trespassing Animals—Duty of Trainmen.
Persons in charge of a locomotive in motion are not bound to keep a lookout for animals trespassing upon the track, nor to presume that they will be there, but having notice of their presence, and that they are liable to injury, are bound to use reasonable care, at least, to avert such injury.

[1] Reported in 71 N. W. 905.

### Same—Evidence.

The circumstances in this case, as shown on the trial, would have warranted the jury in finding that the defendant's employees, running one of its locomotives, saw certain horses, which were run over and killed while on the track, in time to have avoided the killing, although there was no positive evidence that the horses were discovered until they were struck, and no evidence as to the time or distance within which the locomotive could have been stopped.

### Same—Question for Jury.

*Held*, on the evidence, that the question whether the persons in charge of the locomotive neglected to use reasonable care after discovering the horses on the track was for the jury.

Appeal by plaintiff from an order of the district court for Morrison county, Searle, J., denying plaintiff's motion for a new trial. Reversed.

*Lindbergh, Blanchard & Lindbergh,* for appellant.

*C. W. Bunn* and *L. T. Chamberlain,* for respondent.

COLLINS, J.

Action to recover the value of four horses killed by one of defendant's passenger trains, in which the court below directed a verdict for defendant when the parties closed the evidence.

At the argument in this court, counsel for plaintiff practically waived the question of defendant's negligence in failing to keep closed a gate in the fence along its right of way, through which open gateway it appeared that the horses went upon the track, and rested his claim for a reversal upon the ground that there was evidence which would have supported a finding that the trainmen failed to use reasonable care to avoid killing the horses after they were discovered upon the track ahead of the train. We think there was, and that a new trial must be had.

The defendant offered no testimony, but that of the plaintiff tended to show that he was a farmer residing a short distance from defendant's line of road; that, without any fault on his part, his horses escaped from his own premises about 9 o'clock p. m., passed across the farm of a neighbor, and thence through the gateway before mentioned, onto the right of way. It was a bright moonlight night, and the horses could easily have been seen for more than half

a mile either way. The track was upon an embankment, and, practically straight in the direction from which the train came. The four horses killed, and others, wandered along the track in that direction for about one mile, and, on the approach of the train, turned and ran, still keeping on the track, which, as before stated, was on an embankment. There was testimony to the effect that the horses were "raced," as the witness expressed it, for more than 80 rods after they turned; and two of plaintiff's witnesses, who saw the affair, testified that when the horses turned and commenced to run the train was close upon them, and closely followed them for upwards of 30 rods, when the collision occurred, and that for this whole distance the train ran at full speed, without ringing a bell or sounding a whistle, either of which would have a tendency to drive the horses from the track, and that no effort was made to slacken speed until after the horses were struck, one of them being carried 80 rods on the front of the locomotive before the train—a light one of four cars—was stopped.

With this testimony, a case was made for the jury. While the engineer and fireman were not bound to anticipate trespassing animals upon the track, and could rightfully act upon the presumption that there were none, it was their duty to guard against a collision as soon as they discovered that one was likely to occur. If they neglected to use reasonable and proper care, or failed to exercise due diligence, to avoid injury to the horses when they were discovered in a perilous place upon the track, the defendant was liable for the consequences. The trainmen were not bound to keep a lookout for animals trespassing upon the track, nor to presume they would be thereon, but having notice of their presence, and that they were liable to injury, were bound to use reasonable care, at least, to avert such injury. Locke v. First Division, 15 Minn. 283 (350). See, also, Scheffler v. Minneapolis, 32 Minn. 518, 21 N. W. 711; Hepfel v. St. Paul, 49 Minn. 263, 51 N. W. 1049.

But counsel for defendant urge that the evidence wholly failed to show that the animals were discovered at any time prior to the moment they were run down, or that anything could have been done to check the train after the discovery was, or ought to have been, made. It is true that there was no positive testimony as to when the horses were seen, if at all, or as to what appliances were at hand

for stopping, or within what time or distance the train could have been stopped in the emergency. It is, however, a matter of common knowledge that those in charge of locomotives are always active and vigilant in keeping watch of the tracks over which they are running. The most ordinary care requires this activity and vigilance. If these horses were running upon a straight track on an embankment, in front of, and in close proximity to, defendant's train, for from 30 to 80 rods before they were overtaken, and on such a night as was described, these circumstances were sufficient to justify the jury in finding that they were seen in time to have avoided running them down. And it is also a matter of common knowledge, although no effort seems to have been made in this particular instance to stop the train until after the collision, that a light passenger train can easily be stopped in less than 30 rods, if equipped with ordinary appliances. If this train was not so equipped, the fact would be of no avail as a defense, for that in itself would be negligence.

Order reversed.