# MARY MOODY v. CANADIAN NORTHERN RAILWAY COMPANY.[1]

June 29, 1923.

No. 23,415.

**Verdict that defendant was negligent in moving train permissible.**

1. Under the evidence the jury might find that the driver of an automobile in which plaintiff was a passenger attempted to cross defendant's railroad track, relying on a signal from its brakeman to the drivers of automobiles ahead, and that, when the automobile was very near the rails, without warning, the train began to back and struck it. If the jury so found, they might conclude that defendant was negligent and that its negligence was a proximate cause of plaintiff's injury.

**Verdict that defendant should have had warning device at crossing permissible.**

2. Following Engstrom v. Canadian Northern Ry. Co. 153 Minn. 46, it is *held* that the jury might find that defendant was negligent in failing to maintain gates, a flagman or other appliance to warn travelers at the crossing, and that such negligence was a proximate cause of plaintiff's injury.

**When defendant and driver of automobile would be liable.**

3. If the negligence of the defendant concurred with that of the driver of the automobile and plaintiff would not have suffered injury but for the negligence of both parties, each is liable.

**Contributory negligence for jury.**

4. The alleged contributory negligence of the plaintiff was properly left with the jury for their determination.

**Testimony of plaintiff's husband not prejudicial.**

5. Under the circumstances mentioned in the opinion, error in permitting a layman to testify to the nature of plaintiff's injury was not prejudicial.

**Instruction was correct.**

6. It was proper to instruct that extra precautions should be taken to avoid injury, to travelers lawfully on a railroad crossing when cars are backed over the crossing in switching operations.

[1]Reported in 194 N. W. 639.

**No error when whole charge covers request to charge.**

7. Prejudicial error cannot be predicated on the modification of a proper request for an instruction if the charge, taken as a whole, correctly states the law applicable to the issues to which the requested instruction was directed.

**Refusal to submit special questions correct.**

8. There was no abuse of discretion in denying defendant's request for the submission of special interrogatories to the jury.

**Verdict of $1,500 not excessive.**

9. The award of damages was not so excessive as to justify an appellate court in interfering with the verdict.

Action in the district court for Roseau county to recover $3,000 for injuries reecived when an automobile and defendant's train collided. The case was tried before Watts, J., who when plaintiff rested denied defendant's motion to dismiss and at the close of the testimony its motion for a directed verdict, and a jury which returned a verdict for $1,500. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Hector Baxter, Bert Hanson* and *Brown & Guesmer*, for appellant.
*Grady & Fosmark*, for respondent.

LEES, C.

Appeal from an order denying defendant's alternative motion for judgment notwithstanding the verdict or for a new trial.

Plaintiff sued to recover damages for personal injuries sustained when the automobile of Nels Engstrom, in which she was riding, was struck by one of defendant's trains at a street crossing in Warroad, Minnesota. The same accident was involved in Engstrom against this defendant, reported in 153 Minn. 46, 189 N. W. 580 and 190 N. W. 68, and in the instant case the accident was described by the same witnesses.

Plaintiff based her right of recovery on the alleged negligence of the defendant in two respects: (1) In inviting the driver of the Engstrom automobile to cross the railroad track when it was dan-

gerous to do so; and (2) in failing to maintain a flagman, gates, or a signaling device at the crossing to warn travelers of the approach of trains. The jury were instructed that there might be a recovery if defendant had been negligent in either respect.

Defendant contends that there was an entire failure to prove that it was negligent, or that plaintiff's injury was proximately caused by the negligence alleged, and that plaintiff's contributory negligence was conclusively established.

1. In the Engstrom case, the jury found specifically that defendant's negligence consisted solely in its failure to maintain gates, a flagman or some appliance at the crossing to warn travelers of the coming of trains. In the case at bar there was only a general verdict, and, therefore, it is impossible to know on which charge of negligence the jury based their verdict, or whether it was based on both charges. If either charge was not sustained by the evidence, the verdict should not have been allowed to stand. Lindemann v. Chicago, R. I. & P. Ry. Co. 154 Minn. 363, 191 N. W. 825. The first inquiry is whether there was sufficient evidence to make the question of negligence one for the jury.

The testimony of the witnesses Hoyez and Weitmeier was the same as in the Engstrom case. See 153 Minn. 46, 189 N. W. 581. The testimony of plaintiff is somewhat different. She said Engstrom stopped his automobile between the office of the Marvin Lumber Company and the track "just a couple of instants" and then drove on; that, when she first saw the train, the automobile was 20, 22 or 24 feet from the track, moving slowly but gradually gaining speed; the train was backing and a brakeman was hanging to the end car, and he shouted when the automobile was almost on the track. Plaintiff was not asked whether the Hoyez and Weitmeier automobiles were ahead of Engstrom, or whether the brakeman signaled the drivers to cross the railroad track.

The witness Brown testified that, as he entered the office of the Marvin Lumber Company, he looked west and saw an automobile turning into Lake street. He did not know whose it was or how many persons were in it. He looked out of the office a moment later and saw the Engstrom automobile moving slowly towards the

railroad track. It was near the foot of. a slight incline leading up to the rails. He saw no other automobile west of the track and no trainman at the crossing. The train was then standing still, but began to move back as the automobile came up the incline. These were all the witnesses called by plaintiff to describe the accident.

It was also described by several witnesses called by defendant. One of them said that immediately before the accident she walked along the north sidewalk on Lake street, crossed the railroad track, and when she reached a spur track east of the main line crossed to the south side of Lake street and walked a short distance along the south sidewalk. Then she heard shouting behind her, turned and saw the train slowly backing and the front end of Engstrom's automobile 7 or 8 feet from the rails, and saw the automobile move forward until it was struck by the train. She said the train was standing south of Lake street when she crossed the track and that she saw no automobiles going over the crossing at that time.

Another witness testified that, as he walked diagonally from the south to the north sidewalk west of and near the crossing the Engstrom automobile came up behind him without stopping and the collision occurred, and that he saw no other automobiles west of the crossing; and another, that he saw the Engstrom automobile come up the incline, but not the Hoyez or Weitmeier automobiles.

One of the witnesses was at an oil house located east of and near the crossing. He first saw the Engstrom automobile when it was 60 or 70 feet from the railroad track, saw the brakeman wave his hand and heard him shout as Engstrom drove up the incline. The train was backing, and, seeing the danger, the witness waived his coat and shouted, but Engstrom did not stop. He saw no other automobiles west of the crossing.

The testimony of the brakeman O'Donnell is practically the same as in the Engstrom case, where it was quite fully set out in the opinion of Mr. Justice Quinn. See 153 Minn. 46, 48, 189 N. W. 580.

If the jury found that Engstrom saw Hoyez and Weitmeier drive over the crossing in response to a signal from the brakeman, that he was not far behind and followed them because their conduct and the brakeman's signal indicated that it was safe to cross, and that

when he was very near the rails the train began to back without warning, they might conclude that defendant was negligent.

2. In the Engstrom case a consideration of substantially the same evidence led to the conclusion that the jury might find the facts to be as above stated, and, if they so found, that it would be for them to determine whether Engstrom's death was proximately caused by defendant's failure to maintain gates, or a flagman or other appliance to warn travelers at the crossing, and whether he was guilty of contributory negligence. This conclusion represented the deliberate judgment of a majority of the court. A division of opinion here as to the effect of the evidence is a demonstration that the verdict should stand. Unless the members of an ·appellate court agree that a verdict is without support in the ·evidence, it can hardly be said that the trial judge erred in denying a motion for judgment notwithstanding the verdict because there was no room for a difference of opinion among reasonable men. The Engstrom case is controlling upon the issue of negligence made by proof of the absence of gates, a flagman or other appliance to warn travelers at the crossing, and requires a holding that the jury might find this to be a proximate cause of plaintiff's injury. We also hold that if the jury was satisfied that plaintiff had established her first charge of negligence, they might further find that such negligence was a proximate cause of her injury and that she was free from contributory negligence.

It is urged that Engstrom was grossly negligent. Grant for the argument that he was, his negligence could not be imputed to plaintiff, Kalland v. City of Brainerd, 141 Minn. 119, 169 N. W. 475, and if defendant also was negligent and its negligence concurred in causing the injury and it would not have been suffered but for the negligence of both parties, each would be liable. Gowan v. McAdoo, 143 Minn. 227, 173 N. W. 440; Reader v. Ottis, 147 Minn. 335, 180 N. W. 117, 16 A. L. R. 463.

3. Over objection, plaintiff's husband was allowed to testify that her kneecap and one of her fingers were broken. He was a layman not qualified to speak on the subject, and, after he he had described the external evidences of his wife's injury which would be apparent

to any one, he should not have been allowed to testify as he did that bones he could not see were broken and had not united. However, the testimony of physicians and the X-ray photographs demonstrated that there had been no fracture of the kneecap or the finger. It is highly improbable that the jury paid any attention to the husband's testimony to the contrary after it was clearly demonstrated that he was wrong, and hence we conclude that the error was not prejudicial.

4. The jury were instructed that in switching operations, when cars are backed over a street in a city or village, extra precautions should be taken to avoid injury to travelers lawfully crossing the track. We see no error in the giving of this instruction. Koltz v. Winona & St. P. R. Co. 68 Minn. 341, 71 N. W. 257.

5. The court modified defendant's requested instruction here following by inserting the words we have italicized:

"If she knew of the danger which resulted in her injury and failed to call Engstrom's attention to it, or permitted him to drive recklessly into it without protest by her *and she was guilty of any negligence in this respect*, you cannot give her any verdict."

The requested instruction was a proper one, Cunningham v. City of Thief River Falls, 84 Minn. 21, 86 N. W. 763, and it should not have been modified, but when the charge on the subject of contributory negligence is read as a whole, we think defendant has no just cause for complaint. Immediately preceding the giving of the requested instruction the jury were told that, although plaintiff was not driving the automobile, it was her duty to exercise reasonable care to avoid the collision, and, if she failed to use such care, it would be negligence on her part which would prevent a recovery if such negligence contributed to cause the injury she received. In another portion of the charge the jury were told that plaintiff was obliged to exercise such care as a prudent person riding with another would exercise under similar circumstances; also that plaintiff, a mere gratuitous passenger, should not be found guilty of contributory negligence unless in some way she actively participated in the negligence of the driver or was aware that he was careless or

unmindful of a danger known or apparent to her, or was not taking proper precautions in approaching a place of danger, and, being so aware, she failed to warn the driver or take proper precautions for her own safety.

6. The denial of defendant's request for the submission of special interrogatories to the jury was not manifestly wrong, hence there was no abuse of judicial discretion.   3 Dunnell, Minn. Dig. § 9802.

7. The jury gave plaintiff a verdict for $1,500.   Her injuries were not serious.   A physician, who examined her at defendant's request, testified that at the time of the trial one of her fingers was tender and sore and that her knee was inflamed and enlarged.   He attributed these conditions to rheumatism.   He also testified that she appeared to have an inflamed gall bladder, not caused in his opinion by her injuries.   The physician who attended her when she was hurt found abrasions of the skin and bruises on various portions of her body, but no other evidences of injury.   She received no medical treatment after the fourth day following the accident.   She testified that she remained in bed for about four weeks, suffered considerable pain, was not free from it at the time of the trial, did not sleep well and was nervous.

Under all the circumstances, we cannot say that the trial court should have interfered with the verdict because the jury went beyond the bounds of reason in assessing damages.   This is the test applied when an appellate court is called upon to review a motion for a new trial on the ground that the verdict was excessive.   Hillstrom v. Mannheimer Brothers, 146 Minn. 202, 178 N. W. 881.

The order appealed from is affirmed.